# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Judge Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7402 | **DATE** | 8/27/2001 |
| **CASE TITLE** | Susan Andrews vs. The College Board | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

> Defendant's Motion for Summary Judgment and Motion to Strike (doc. #'s 12 & 33)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's Motion for Summary Judgment (doc. #12) is **GRANTED.** Defendant's Motion to Strike (doc. #33) is **DENIED.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | | |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | AUG 2 8 2001 | | | |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | ED-7 FILED FOR DOCKETING | | | |
| JHC | courtroom deputy's initials | 01 AUG 27 PM 7: 01 | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SUSAN ANDREWS,        )
      Plaintiff,       )
                    )    **CAUSE NO. 99C7402**
    v.              )
                    )    **JUDGE WILLIAM J. HIBBLER**
THE COLLEGE BOARD,    )
      Defendant.      )

DOCKETED
AUG 28 2001

## MEMORANDUM OPINION

This Court has before it, Defendant College Board's Motion for Summary Judgment (doc. #12) and its Motion to Strike Portions of Plaintiff's Response to Defendant's Statement of Uncontested Facts (doc. #33). Plaintiff filed her Complaint charging violations of the Age Discrimination in Employment Act, ("ADEA") 29 U.S.C. § 621, et seq., and the Americans with Disabilities Act, ("ADA") 42 U.S.C. §12101, et seq. Plaintiff also filed a claim under the Family and Medical Leave Act, ("FMLA") 29 U.S.C. § 2601, et seq., however, Plaintiff concedes that Defendant does not employ the requisite number of employees. Therefore, Plaintiff's FMLA claim is **dismissed.** Finally, Plaintiff filed a claim under Illinois law for retaliatory discharge under the Illinois Workers' Compensation Act, ("IWCA") 820 ILCS 305/1 et seq. The parties have fully briefed the issues and this case is ripe for ruling. After careful review, this Court **GRANTS** Defendant's Motion for Summary Judgment. With regard to Plaintiff's Local Rule 56.1(b) Statement of Uncontested Facts, although this Court agrees with Defendant that Plaintiff's Response to Defendant's Statement of Uncontested Facts does not comport with the Local Rules, Defendant was not prejudiced by the error, and therefore, the Motion to Strike is **DENIED.**



## BACKGROUND

Plaintiff, Susan Andrews, began her employment with Defendant, College Board, in 1978 as a clerical employee. As part of her compensation package, Defendant offered Plaintiff a college tuition reimbursement benefit, under which Plaintiff, or her dependent children, would be eligible for $22,196 per year in tuition benefits. In 1993, during her employment with Defendant, Plaintiff injured her back and received workers' compensation benefits as a result. Following her injury, Plaintiff's doctor issued a temporary work restriction which limited Plaintiff from lifting, pushing, pulling, and bending. As a result of that injury, Plaintiff suffered from chronic back pain, known as sciatica, and since her injury, Plaintiff has experienced recurrent episodes. In 1996, Plaintiff suffered an acute episode of pain and numbness in her extremities, and her doctor placed her under another work restriction. In 1997, Plaintiff's physician informed Defendant that Plaintiff's injury was likely permanent.

During her employment with Defendant, Plaintiff received merit reviews which consistently evaluated her performance as meeting her employer's expectations. In April 1997, Plaintiff's final review rated her as meeting her employer's expectations and Plaintiff was given a raise and level increase. In July 1997, Plaintiff was reassigned to a vacant support staff position in Defendant's Advanced Placement department. In her new position, Plaintiff was assigned to support Advanced Placement Director Robert McDonough. Plaintiff's duties included (1) handling McDonough's mail; (2) routing his incoming calls; and (3) providing support for his presentations and meetings. Plaintiff was also given the responsibility of overseeing the preparation of packets and publications which were distributed to conference participants. Plaintiff also worked closely with Ann Winship, an Associate Director in the Advanced Placement department. In providing this support, Plaintiff

was responsible for (1) ordering publications which were used in the packets; (2) communicating with registrars for the workshops; (3) coordinating site logistics; and (4) overseeing packet preparation. Plaintiff was also expected to send packets and publications in response to telephone requests. During the fall conference season, McDonough discovered several deficiencies in Plaintiff's performance. McDonough voiced his concerns in a November 1997 memorandum addressed to Plaintiff. Then in December 1997, Plaintiff took a scheduled vacation and then informed Defendant of her intent to take sick leave that she had accumulated.

While Plaintiff was on vacation, McDonough and Claudia Twarski, an office manager, recommended that Plaintiff be terminated. Daniel Murray, Executive Director of the Midwest Regional Office, presented the recommendation to the Executive Director of Human Resources, Rosemarie McGrath, who in turn approved the dismissal. Defendant terminated Plaintiff's employment on January 6, 1998. At the time of her discharge, Plaintiff was forty-seven years old.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Bragg v. Navistar Int'l Trans. Corp.*, 164 F.3d 373 (7th Cir. 1998).

The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497

(7th Cir. 1998). A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts which are considered material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial." *Id.* The nonmoving party cannot rest on its pleadings, *Weicherding v. Riegel*, 160 F.3d 1139 (7th Cir. 1998); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920-21 (7th Cir. 1994), nor may that party rely upon conclusory allegations in affidavits. *Smith v. Shawnee Library Sys.*, 60 F.3d 317, 320 (7th Cir. 1995). This general standard is applied with added rigor in employment discrimination cases, where intent is inevitably the central issue. *DeLuca v. Winer Indus.*, 53 F.3d 793 (7th Cir. 1992); *Tomasello v. Delta Airlines, Inc.*, 8 F. Supp.2d 1090 (N.D. Ill. 1998). Accordingly, "affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Collier v. Budd Co.*, 66 F.3d 886,892 (7th Cir. 1995); *Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir. 1994). During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir. 1996). Applying the above standard, this Court addresses the defendant's motion.

As a preliminary matter, Defendant argues that Plaintiff is time barred from asserting any acts which occurred more than 300 days before the May 19, 1998 date which she filed her EEOC charge. Defendant maintains that any incidents of harassment which occurred prior to July 24, 1997 are barred from this litigation. Plaintiff counters that Defendant's actions constitute a continuing violation and therefore they should be linked with actions falling within the limitations period. After

4

careful review, this Court finds that Plaintiff has failed to allege a continuing violation and therefore, any incidents which took place prior to July 24, 1997 are time barred.

Plaintiffs in Illinois must file EEOC charges within 300 days of the allegedly unlawful employment practice. *Speer v. Rand McNally & Co.*, 123 F.3d 658, 662 (7th Cir. 1997); *Moore v. Allstate Ins. Co.*, 928 F. Supp. 744, 750 (N.D. Ill. 1996). However, standard principles of limitations law, including the continuing violation theory, apply in ADA and ADEA cases. *Huels v. Exxon Coal U.S.A., Inc.*, 121 F.3d 1047, 1049 (7th Cir.1997) (ADA); *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267-69 (7th Cir.1996) (ADEA). The continuing violation doctrine allows a plaintiff to obtain relief from a time barred act of discrimination by linking it with acts which fall within the limitations period. *Gurzynski v. Area 604/605 Local 6266*, No. 98 C 2971, 1999 WL 728096, *3 (N.D. Ill. Sept. 14, 1999).

> The continuing violation doctrine is applicable only it "it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct, as in a case in which the conduct could constitute, or be recognized, as actionable harassment only in light of events that occurred later, within the period of the statute of limitations."

*Gurzynski*, 1999 WL 728096, at *3 (citing *Galloway v. General Motors Serv. Parts Operations*, 78 F.3d 1164, 1167 (7th Cir. 1996)). "To succeed under the continuing violation theory, a plaintiff must show that the alleged acts of discrimination were part of an ongoing pattern of discrimination and that at least one of the alleged acts of discrimination occurred within the relevant limitations period. *Duhart v. Fry*, 957 F. Supp. 1478, 1483 (N.D. Ill.1997). Should Plaintiff succeed in showing an ongoing pattern, this Court will treat the series of acts as one continuous act within the 300 day limitations period. *Gurzynski*, 1999 WL 728096, at *3; *Duhart*, 957 F. Supp. at 1483. Where it is evident that a plaintiff should have been aware that she was a victim of harassment long before she

brought suit, she may bring an action "provided that the last of harassment occurred within the statue of limitations, [however] the plaintiff cannot reach back and base [his] suit on conduct that occurred outside the statute of limitations." *Duhart*, 957 F. Supp. at 1484.

In this case, the plaintiff cannot reach back and include incidents that occurred outside the 300-day limitations period. Plaintiff has utterly failed to demonstrate an ongoing pattern of discrimination. Instead, Plaintiff makes a case that the discrimination occurred shortly before and during her discharge. On the evidence and pleadings before this Court, Plaintiff's continuing violation claims must fail. However, this Court finds that Plaintiff may benefit from this holding because as a result, any claims of inadequate performance outside the 300-day limitation will not be considered either.

ANALYSIS

In the employment discrimination context, the employee, in this case the plaintiff, bears the burden of proving a prima facie case of discrimination by a preponderance of the evidence. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981). In order to establish such a prima facie case, the employee must satisfy four requirements. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In cases such as this, the plaintiff must show that (1) she is a member of a protected class, (2) she was performing her work in a satisfactory matter so as to meet her employer's expectations, (3) she was discharged, and (4) she was replaced by someone substantially younger and the discharge was motivated by her disability. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 310 (1996); *Contreras v. Suncast Corp.*, 237 F.3d 756, 759 (7th Cir. 2001); *Foster v. Arthur Andersen, LLP*,168 F.3d 1029, 1032 (7th Cir. 1999); *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 398 (7th Cir. 1997); *Hartley v. Wisconsin Bell, Inc.*, 124

F.3d 887, 890 (7th Cir. 1997); *Maier v. Lucent Technologies,* 120 F.3d 730, 734 (7th Cir. 1997); *Leffel v. Valley Financial Services,* 113 F.3d 787 (7th Cir. 1997); *Denisi v. Dominick's Finer Foods, Inc.,* 99 F.3d 860, 864 (7th Cir. 1996); *EEOC v. Our Lady of Resurrection Medical Center,* 77 F.3d 145, 148 (7th Cir. 1996). Should Plaintiff fail to make this prima facie case, she cannot withstand Defendant's motion for summary judgment. *Gilty v. Village of Oak Park,* 919 F.2d 1247, 1250 (7th Cir. 1990); *Randle v. LaSalle Telecommunications, Inc.,* 876 F.2d 563, 568 (7th Cir. 1989).[1]

In the event that Plaintiff does meet her burden and proves a prima facie case of discrimination exists, the burden then shifts to Defendant to "articulate some legitimate nondiscriminatory reason" for its action.[2] *Burdine,* 450 U.S. at 253. If Defendant meets its burden of production, then the burden shifts once again to Plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." *Id.* A plaintiff may prove a pretext existed by demonstrating "either directly by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence."[3] *Id.* at

---

1 In relevant part, the court in *Randle* stated, "thus where the nonmovant is unable to establish at least the minimal elements of a prima facie case under the *McDonnell Douglas* methodology, the entry of summary judgment is required. *See Celotex Corp.,* 477 U.S. at 322. It is axiomatic that there can be no genuine issues of material fact if the plaintiff is unable to establish a prima facie case 'since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" (citing *Celotex,* 477 U.S. at 323.)

2 The defendant's burden is one of production only, because the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." See, *Burdine,* 450 U.S. at 253.

3 This is a "but for" analysis, with the pertinent issue being, would the employer have discharged the employee but for the motivating factor of her age. *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir. 1986).

256. It should be noted that "in many employment discrimination cases, the second element of the prima facie case, satisfactory job performance, and the issue of pretext focus on the same circumstances because the employer maintains that the discharge was based on its reasonable belief that the employee was not performing in an acceptable manner." *Denisi,* 99 F.3d at 864-865. In order to survive Defendant's motion for summary judgment, Plaintiff must "come forward with sufficient evidence to suggest that the [defendant's] proffered reasons for its decisions are pretextual. In order to meet this burden, [the plaintiff] must present evidence to suggest not that the [defendant] was mistaken ... but it was lying in order to cover up the true reason." *Vanasco v. National-Louis University,* 137 F.3d 962, 966 (7th Cir. 1998).

With the aforementioned discussion in mind, this Court will now determine whether Plaintiff has met her initial burden of proving a prima facie case of age discrimination and discrimination because of her disability.

## I. Plaintiff's ADA and ADEA Claims

### A. Plaintiff's ADA Prima Facie Case

In Count I, Plaintiff alleges, that she is a qualified individual who suffers from a disability within the meaning of the ADA. Plaintiff also asserts that her disability was the motivating factor in her termination. Plaintiff goes on to allege that Defendant failed to reasonably accommodate her disability and its disparate treatment of her constituted discrimination in violation of the Act. Defendant counters that Plaintiff is not disabled under the ADA and her impairment was not the motivating factor in her discharge. This Court has reviewed the pleadings and finds that Plaintiff was not disabled under the ADA. Accordingly, summary judgment must be granted in Defendant's favor on Plaintiff's ADA claim.

The ADA proscribes discrimination against a qualified individual with a disability "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Plaintiff's first burden is to establish that she has a disability as defined by the ADA. Under the ADA, disability is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Plaintiff must also demonstrate that she is qualified for the position in that she "satisfies the pre-requisites for the position" and "can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Bombard*, 92 F.3d at 563 (quotations omitted). In other words, "[t]o qualify for the position in question, the plaintiff must show that [she] is physically capable of performing the essential functions of the position, with or without an accommodation, and that [she] meets the legitimate educational, training, experience, and other requirements set by the employer for the position." *Contreras*, 237 F.3d at 763. Finally, Plaintiff must show that she suffered an adverse employment action as the result of her disability. Accordingly, this Court must first determine whether Plaintiff's condition qualifies as a disability under the ADA. Because this Court finds that Plaintiff has failed to satisfy the first prong of her prima facie case, her ADA claims fails in its entirety.

The first prong of Plaintiff's prima facie case is that she must be disabled within the meaning of the ADA. Defendant claims that because Plaintiff is not precluded from a broad class of jobs, she is not disabled under the statute. Plaintiff counters that she is clearly disabled under the ADA because she is substantially limited in the major life activity of working. After reviewing the facts

presented in light of the applicable law this Court finds that Plaintiff is not disabled under the ADA.

For the purposes of Plaintiff's claim, a disability includes a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12101(2)(A); *Webb v. Clyde L. Choate Mental & Health Dev. Ctr.*, 230 F.3d 991, 997 (7th Cir. 2000). "Substantially limits" means that the person is either unable to perform a major life function or is significantly restricted in "the duration, manner or condition under which [the] individual can perform a particular major life activity, as compared to the average person in the general population." 29 C.F.R. § 1630.2(j). With respect to this major life function, "substantially limits" means the individual is significantly restricted in "the ability to perform a class of jobs or a broad range of jobs in various classes." *Webb*, 230 F.3d at 998. "Thus, an individual is not substantially limited in working just because he or she is unable to perform a particular job for one employer, or because he or she is unable to perform a specialized job or profession requiring extraordinary skill, prowess or talent;" instead, "the impairment must substantially limit employment generally." *Id.*

Defendant claims that Plaintiff is not disabled because she is not limited in major life activities. Defendant argues that because Plaintiff cannot only carry out day to day activities, but can also work in a secretarial capacity, her impairment is not a significant barrier to her ability to be employed. Plaintiff counters that she is disabled because she has a back condition which prevents her from performing heavy lifting and her impairment eliminates her ability to perform a broad class of jobs. This Court finds the Seventh Circuit's opinions in *DePaoli* and *Contreras*, to be not only instructive but analogous to the claims in this case. *Contreras v. Suncast Corp*, 237 F.3d 756 (7th Cir. 2001); *DePaoli v. Abbott Labs*, 140 F.3d 668 (7th Cir. 1998). In *DePaoli*, the plaintiff developed tendinitis as a result of the repetitive motions on her assembly line job. The court went

10

through a three-step analysis to determine whether DePaoli had a disability under the statute. First, the court found that her tendinitis constituted a physical impairment. Next, the court determined that DePaoli's major life activity of working was affected. Finally, the court went through an in-depth analysis as to whether the plaintiff's disability substantially limited her life activity of working.[4] The court noted that the plaintiff had become disabled from performing virtually any employment that required repetitive motions of the hand and was precluded from a wide class of jobs in the Chicago area. Ultimately, the court found that the plaintiff had produced enough evidence to survive summary judgment on the issue of whether she was disabled. In contrast to its decision in *DePaoli*, the Seventh Circuit reached the conclusion that a back injury followed by restrictions did not constitute a significant restriction on the plaintiff's capacity to work. In *Contreras*, the plaintiff, a forklift operator, was injured on the job and then placed on work restrictions. Contreras was instructed by his physician not to drive a forklift for more than four hours a day and not to lift anything in excess of forty-five pounds or engage in strenuous work. In *Contreras*, the court first found that the plaintiff's physical impairment constituted a significant restriction on his capacity to work. *Id.* at 763. However, the court noted that the plaintiff had failed to demonstrate that he was precluded from a broad class of jobs.[5] *Id.* The court reached this conclusion by finding that forklift

---

4 In *DePaoli*, the court relied on EEOC Regulations to define the components of a broad class of jobs. *DePaoli*, 140 F.3d at 672. Specifically, the court noted that "an individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the individual's impairment eliminates his or her ability to perform a class of jobs. This would be so even if the individual were able to perform jobs in another class, e.g., te class of semi-skilled jobs." *Id.* (quoting 29 C.F.R. Pt. 1630, App. § 1630.2(j)).

5 In *Contreras*, the court also relied on EEOC Regulations, although a different excerpt from the same Appendix, to define a broad class of jobs. *Contreras*, 237 F.3d at 762. The court mentioned that "'an individual is not substantially limited in working just because he or she is unable to perform a particular job for one employer, or because he or she is unable to perform a specialized job or profession requiring extraordinary skill, prowess or talent;' instead, 'the impairment must substantially limit employment generally.'" *Id.* (quoting 29 C.F.R. Pt. 1630, App. § 1630(j)).

operation was not broad enough to constitute a specific class of jobs. *Id.* Accordingly, the court in *Contreras*, found that the plaintiff did not have a disability because he was not substantially limited in his major life activity of working.

This Court is faced with the burden of reconciling *DePaoli* and *Contreras* with the case at hand in light of the fact that Plaintiff's claims demonstrate elements of both. In this case, there is no dispute that Plaintiff has a debilitating back injury. There is also no dispute that Plaintiff's doctor, like the doctors in *DePaoli*, placed her on a work restriction under which she was not to engage in repetitive pushing, pulling, twisting, bending or prolonged standing or sitting without a break, nor was she allowed to lift objects weighing more than twenty pounds. However, Plaintiff's weight restriction and restriction from strenuous work, standing alone, is not sufficient evidence to demonstrate that she was precluded from a broad class of jobs. *Contreras*, 237 F.3d at 763. Also relevant to this Court's analysis is the "training, knowledge, skills, and ability to perform the particular work, as well as the geographic area reasonably available to the plaintiff." *DePaoli*, 140 F.3d at 673; *See also, Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 953 (7th Cir. 2000) ("To qualify as substantially limiting his ability to work, [the plaintiff's] condition must preclude him from a class or range of jobs for which he possesses the necessary training, skills and abilities.) Plaintiff's education, skills, and work experience qualify her for secretarial and clerical positions.[6] Furthermore, Plaintiff began working full-time as a resource clerk at Niles North High School, a high school located in the greater-Chicago area. Plaintiff has not alleged that she is unable to work in a broad class of jobs due to her disability, and in fact, she claims that her condition does not affect her ability to perform secretarial and clerical work. (Pl.'s Dep. at 793.) In asserting that her impairment

---

6 Plaintiff also has training as a physical therapist and sought employment as such after Defendant terminated her.

does not limit her ability to work as a secretary, Plaintiff has admitted that her disability fails to substantially limit her major life activity of working. *Walsh v. Andersen Consulting LLP*, No. 00 C 2743, 2000 WL 1809960, at *5 (N.D. Ill. Dec. 11, 2000). *See also, Sutton*, 527 U.S. 471, 493 (1999) (the inability to perform a particular job for a particular employer is not a disability); *EEOC v. Rockwell Intern. Corp.*, 243 F.3d 1012, 1018 (7th Cir. 2001) ("Mere proof that an impairment prevented an individual from performing a particular job for a particular employer is insufficient to render him or her "disabled' under the ADA"); *Moore*, 221 F.3d at 953 (because the plaintiff was trained to drive buses and the doctor's restrictions did not restrict his ability to drive buses, he was not substantially limited in the major life activity of working); *Wolz v. Deaton-Kennedy Co.*, No. 98 C 6610, 2001 WL 699096, at *6 (N.D. Ill. June 20, 2001) (the plaintiff's job history demonstrated that she was not precluded from a broad range of jobs because she found other employment in the same field); *O'Rourke v. Roadway Express, Inc.*, No. 99 C 50059, 2000 WL 1209423, at *3 (N.D. Ill. Aug. 21, 2000) (same); *Wojcik v. Pillsbury Co.*, No. 98 C 50334, 2000 WL 876909, at *4 (N.D. Ill. June 30, 2000) (same). Therefore, Plaintiff has failed to meet the first prong of her prima facie case in establishing she is disabled under the ADA.

## B. Plaintiff's ADEA Prima Facie Case

Plaintiff's second cause of action is an age discrimination claim under the ADEA. In Count II, Plaintiff alleges that her age was a motivating factor in her termination. It is Plaintiff's contention that Defendant terminated her in an attempt to curtail benefits to which she was entitled. Defendant counters that Plaintiff cannot establish a prima facie case of age discrimination because she was not meeting the legitimate performance expectations at the time of her discharge. This Court finds that Plaintiff did not meet the legitimate expectations at the time of her termination, and therefore, she

13

cannot make out a prima facie case of age discrimination.

In order to establish a prima facie case of age discrimination, a plaintiff must establish that (1) she was in the protected age group of 40 years or older; (2) she was performing her job within the legitimate expectations of her employer; (3) she was discharged; and (4) a substantially younger employee replaced her. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 310 (1999); *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 746 (7th Cir. 1999). Because both parties agree that Plaintiff was within the protected age group, discharged, and replaced by a substantially younger employee, this Court must now resolve whether Plaintiff was meeting Defendant's legitimate expectations at the time of her discharge.

Defendant claims that Plaintiff failed to meet its legitimate business expectations at the time of her termination. As evidence of this contention, Defendant points to the fact that Plaintiff made costly mistakes within months of her termination. Plaintiff counters that her most recent evaluation was not only positive, but resulted in a promotion. Plaintiff further asserts that Defendant blamed her for the mistakes her co-workers made. First, it should be noted that Plaintiff's reliance on her performance evaluation and raise is misplaced. The evaluation took place in April 1997, more than nine months before she was terminated. Additionally, Defendant has submitted documentation to support its contention that shortly before her termination, Plaintiff failed to meet her employer's legitimate expectations. In July 1997, Plaintiff not only left the switchboard unattended, but was rude to callers when she worked the switchboard. (Def.'s Ex. 33, Aff. of Rosemary McGrath at Ex. 1.) Then in November 1997, McDonough issued a written reprimand highlighting problems with Plaintiff's performance. Specifically, McDonough noted that Plaintiff failed to route mail in a proper

and timely fashion and she improperly prepared packets for two conferences.[7]  Furthermore,

McDonough voiced concern over Rick Weiland's comments regarding the quality of Plaintiff's

work.[8]  Additionally, in December, Winship compiled comments regarding Plaintiff's poor

performance during the 1997-1998 conference season.[9]  In cases such as this, the appropriate inquiry

is not whether Plaintiff's performance was adequate at some time during her employment.  The

essential issue is whether her performance was adequate at the time she was terminated.  *Karazanos*

*v. Navistar Intern. Trans. Corp.*, 948 F.2d 332, 336 (7th Cir. 1991); *Hong v. Children's Memorial*

*Hosp.*, 993 F.2d 1257 (7th Cir. 1993).  Courts in this circuit have repeatedly found that an

employee's own perception of her performance is insufficient, and does not constitute affirmative

evidence which may defeat a motion for summary judgment.  The relevant perception is that of the

decisionmaker.  *Weihaupt v. American Medical Ass'n*, 874 F.2d 419, 428 (7th Cir. 1989);

*Karazanos*, 948 F.2d at 337-38.  In this case, Defendant has provided ample evidence to support its

---

7 In his memo to Plaintiff entitled "Job Performance," McDonough detailed two costly mistakes made by Plaintiff.  The first of these errors was discovered during a two-day workshop in mid-November.  Although McDonough gave Plaintiff instructions as to how the packets should be assembled, during the workshop McDonough discovered that pieces were missing from some packets and other packets contained material which should not have been included.  The other mistake made by Plaintiff was discovered during a seminar two days later.  In that instance, while preparing for the seminar, McDonough discovered that while Plaintiff had correctly prepared the packets, she had enclosed far too few additional handouts.  McDonough explicitly instructed Plaintiff that he needed these handouts and wished to include them with the packets, but because of the mistake, he instead had to distribute the packets without the handouts.  (Def.'s Ex. 23.)

8 In his written reprimand to Plaintiff, McDonough informed Plaintiff that Weiland felt that Plaintiff was disorganized and compounded his labor, and as a result, he did not wish to work with Plaintiff in the future.  (Def.'s Ex. 23.)  Plaintiff has offered contradictory evidence questioning the accuracy of Weiland's remarks.  Both Plaintiff and Weiland assert that Weiland's statements were taken out of context.  However, this Court will address the issue of Weiland's remarks in the pretext section of this memorandum.

9 In a memo to McDonough, Winship noted numerous problems with Plaintiff's performance during the 1997-1998 Teacher Training Conferences.  Specifically, Winship noted Plaintiff incorrectly prepared packets, lacked attention to detail which resulted in packet shortages, failed to include publications and placed the wrong publications in packets, neglected to send packets, and sent incomplete packets.  Furthermore, Plaintiff misspelled consultants names, eliminated subject sessions, and misrepresented sessions.  Also, Plaintiff ordered lunch by mistake for which Defendant paid and failed to order audio-visual equipment for that same conference.  Finally, Winship noted that Plaintiff was disorganized, unprofessional, and unaccommodating.  (Def.'s Ex. 26.)

contention that Plaintiff failed to perform to its legitimate expectations. "Plaintiffs lose if the company honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless." *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 890 (7th Cir. 1997) (citing *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir. 1992). Therefore, in light of Defendant's evidence, this Court must come to the conclusion that Plaintiff failed to meet the legitimate expectations of her employer.

## II. Pretext

Even if Plaintiff had established a prima facie case of age discrimination, she has failed to raise a genuine issue of fact as to whether Defendant's proffered reasons for her termination, namely her poor performance, were pretextual.

It should be noted that "in many employment discrimination cases, the second element of the prima facie case, satisfactory job performance, and the issue of pretext focus on the same circumstances because the employer maintains that the discharge was based on its reasonable belief that the employee was not performing in an acceptable manner." *Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 864-65 (7th Cir. 1996). In order to survive Defendant's motion for summary judgment, Plaintiff must "come forward with sufficient evidence to suggest that the [defendant's] proffered reasons for its decisions are pretextual. In order to meet this burden, [Plaintiff] must present evidence to suggest not that the [defendant] was mistaken...but it was lying in order to cover up the true reason." *Vanasco*, 137 F.3d at 966.

Defendant has presented the following evidence in support of its claim that Plaintiff was terminated for poor performance: (1) she omitted packet materials; (2) she included wrong materials; (3) she shipped materials by express mail without permission; (4) she ordered lunch for conference

participants when she should not have; (5) she failed to learn the computer system; (6) she improperly handled her supervisor's mail; (7) she made numerous costly and careless mistakes; (8) she was inattentive to detail; (9) she failed to follow direction; and (10) she was disorganized. In short, Defendant has presented evidence that Plaintiff performed poorly, and her poor performance was the impetus for her discharge.

Plaintiff rebuts Defendant's contention that she was fired for poor performance by claiming that Defendant placed her in the physically demanding position for the purpose eliminating her. Plaintiff claims that Defendant was aware of the fact that she could not perform the physical labor associated with her position, and therefore, Defendant set her up to fail. The fatal flaw to Plaintiff's claim is that Defendant terminated her, not because she was unable to perform physical labor, but because she made many costly and careless mistakes. It was Plaintiff's inattention to detail, rather than her physical limitation, which was her downfall. Furthermore, Plaintiff claims that because Defendant is a nonprofit organization, Defendant was not harmed by Plaintiff's including extra materials in the packets. Plaintiff goes on to assert that because Defendant did not discover her error until a year after it was made, it was of no financial consequence. These allegations are without merit. The fact that Defendant may be a nonprofit organization or that it did not discover Plaintiff's mistakes for a number of months does not negate the fact that Plaintiff failed to meet Defendant's legitimate expectations.

Finally, Plaintiff offers her co-workers' opinions to support her allegations of pretext. Plaintiff claims that Ann Winship, an Associate Director in the Advanced Placement Department, did not believe that she should be fired, however, in deposition testimony, Ms. Winship stated that not only was she suspect of Plaintiff's work for a number of years, but that it was her opinion that

Plaintiff should be fired. (Def.'s Ex. 13, Winship Dep. at 40-41.) Ms. Winship testified that not only was Plaintiff disruptive, but she did not take her work seriously, which was a cause of concern. *Id.* Furthermore, Plaintiff makes much of the fact that she and Ms. Winship had a pact to try to make the working relationship function and Defendant instructed Ms. Winship to change her evaluation contrary to the pact. (Pl.'s Ex. 40, Winship Dep. at 131-32.) However, it is clear from Ms. Winship's deposition that before Defendant put her to task, her evaluations of Plaintiff were neither completely accurate nor entirely objective. Ms. Winship admitted that she was giving Plaintiff the benefit of the doubt and protecting her from reprisal for her many mistakes. *Id.* at 80. In fact, Ms. Winship makes it clear that she ultimately had to tell the truth about Plaintiff's performance.[10] *Id.* at 131-32. Although Plaintiff claims that Ms. Winship was criticized for honest fact finding, an objective reading of the record demonstrates that Ms. Winship engaged in honest fact finding only after she was criticized for protecting Plaintiff and covering up her mistakes. In fact, while Plaintiff claims that Ms. Winship was concerned that Plaintiff could not handle the demands of the job because of physical limitations, Ms. Winship's deposition testimony tells a different tale. Ms. Winship questioned Plaintiff's assignment to the position because she doubted that Plaintiff was dedicated and willing to do a good job.[11] Plaintiff also points to a statement made by Rick Weiland, an independent contractor who dealt with Plaintiff on a daily basis. At the end of the fall 1997

---

10 In her deposition testimony, Ms. Winship states, "I was trying to operate under that pact, but when it was clear to me that I was having to participate and not give her the benefit of the doubt any more and come up with actual things in the memo that she had done wrong, I had to do that. I mean those were the facts....When I was asked to point out the problems that we've had that I was semi overlooking (sic) at the time in hopes that, you know, we could stay positive about stuff." (Pl.'s Ex. 40, Winship Dep. at 131-32.)

11 Specifically, Ms. Winship stated that "I was unsure of how our working relationship would be, given all the things I've already told you, about how I though about her work, about how serious she was about her work. All the things that I know that had to be - you know, all the balls in the air around this conference planning business that couldn't drop, not one of them, whether she could handle that, *whether she'd keep her nose to the grind stone* (sic), whether she'd be there." (Pl.'s Ex. 40, Winship Dep. at 44) (emphasis added).

conference season, Mr. Weiland informed either Ms. Twarski or Ms. Winship that he in the future he wished to work with Ken Weingard because Mr. Weingard was more organized. Plaintiff claims that Defendant misrepresented Mr. Weiland's statement, but in his deposition testimony, Mr. Weiland clearly stated that he would rather work with Mr. Weingard even though Plaintiff was easy to work with.[12] (Pl.'s Ex. 34, Weiland Dep. at 14.) That Mr. Weiland told Ms. Twarski or Ms. Winship that fact in confidence is of no consequence. Mr. Weiland's request to work with a different liaison coupled with Plaintiff's inability to adequately perform could have led a reasonable employer to conclude that Plaintiff was not meeting legitimate expectations. Plaintiff must do more than demonstrate that Defendant was mistaken about Weiland's intent or took his comments out of context, Plaintiff must present evidence to suggest that Defendant was lying in order to cover up the true reason for her termination. *Vanasco*, 137 F.3d at 966. Plaintiff has failed to meet this burden. Finally, Plaintiff claims that pivotal evidence establishing her competency is the testimonials of fellow co-workers. These former co-workers wrote letters praising Plaintiff's abilities and performance while employed for Defendant. While this Court finds these letters commendable, it is the perception of the decisionmaker, not that of fellow co-workers which is critical to this Court's inquiry. *Hall v. Thornton Fractional Tp. High School Dist. No. 215*, 99 C 1433, 2000 WL 1644548, at *10 (N.D. Ill. Oct. 24, 2000). While there is evidence on the record that Plaintiff was not the source of all Defendant's woes, even Plaintiff admits that Defendant has articulated some nondiscriminatory, non-retaliatory reasons for her discharge. (Pl.'s Mem. in Opp'n to Motion for

---

12 Mr. Weiland stated that even though Plaintiff was easy to work with, he "would rather work with Ken [Weingard] because Ken has got everything computerized, and [he did not] seem to run out of the pieces when [he was] working with Ken and the job [was] a lot more profitable." In fact, "Ken was much more organized because of his knowledge of computers and ability to be able to get [Weiland] what [he] needed beforehand, at least that's the way it had been for the year or two that Ken had been [the] liaison." (Weiland Dep. at 14.)

Summ. J. at 5-6.) Plaintiff's proffered evidence is speculative and self-serving and is therefore inadequate to create a genuine issue of material fact as to pretext.

Ultimately the decision to terminate Plaintiff rested not with Winship, Weiland, or other co-workers, but with McDonough, Twarski, and Dan Murray, the Executive Director. Plaintiff was hired to be McDonough's assistant and she reported directly to Twarski. (Def.'s Ex. 4, Twarski Dep. at 33 and 13.) Plaintiff was given the responsibility of routing McDonough's mail and calls, creating and assembling materials that he would need, and generally assisting him in his activities. *Id.* at 33. Plaintiff was also responsible for arranging sites for conferences, ordering, and then shipping the correct number of packets to conferences in a timely fashion. The record is clear that McDonough believed that Plaintiff failed to meet these requirements of her job. The fact that the job was so demanding that very few people were able to meet Defendant's expectations does not help Plaintiff's case. This is because "this Court's inquiry into the issue of legitimate expectations is more aptly characterized as 'simply bona fide expectations, for it is no business of a court in a discrimination case to decide whether an employer demands too much of its workers.'" *Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1090 (7th Cir. 2000) (citing *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir. 1997)). In cases such as this, the relevant inquiry is not whether the reason for the employment action was "a correct business judgment but whether the decision makers honestly acted on that reason." *Bahl v. Royal Indemnity Co.*, 115 F.3d 1283, 1291 (7th Cir.1997). "In fact, it is not even the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee." *Ransom v. CSC Consulting, Inc.*, 217 F.3d 467, 471 (7th Cir. 2000). Accordingly, Plaintiff has failed to demonstrate that Defendant's proffered reasons for terminating her were pretextual.

### III. Retaliatory Discharge

In Illinois, the general rule is that an at-will employee may be discharged by her employer at any time and for any reason. *Paz v. Commonwealth Edison*, 732 N.E.2d 696, 700 (Ill. App. Ct. 2000). However, where an employee is terminated for exercising her right to pursue workers' compensation benefits, this general rule is relaxed. *Id.* (citing *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 357 (Ill. 1978)). The Illinois Workers' Compensation Act makes it unlawful for an employer to retaliate against employees for exercising their rights or remedies granted by the Act. 820 ILCS 305/4. To state a cause of action for retaliatory discharge, Plaintiff must establish that (1) she was Defendant's employee at or before the time of her injury; (2) she exercised her rights under the Workers' Compensation Act; and (3) her discharge was causally related to the exercise of her rights under the Act. *Borcky v. Maytag Corp.*, 248 F.3d 691, 695 (7th Cir. 2001); *Paz*, 732 N.E.2d at 701. "The element of causation is not met if the employer has a valid, nonpretextual basis for discharging the employee." *Paz*, 732 N.E.2d at 701 (citing *Hartlein v. Illinois Power Co.*, 601 N.E.2d 720 (Ill. 1992).

> Moreover, if an employer chooses to come forward with a valid, nonpretextual basis for discharging its employees and the trier of fact believes it, the causation element required to be proven is not met. Concerning the element of causation, the ultimate issue to be decided is the employer's motive in discharging the employee.
> In retaliatory discharge cases, an employer is not required to come forward with an explanation for an employee's discharge, and it remains plaintiff's burden to prove the elements of the cause of action. An employer may choose to offer a defense if it desires, however.

*Clemons v. Mechanical Devices Co.*, 704 N.E.2d 403, 406 (Ill. 1998). "A claim that rests entirely on suspicious timing is insufficient to survive summary judgment." *Feldman v. American Memorial Life Ins. Co.*, 196 F.3d 783, 792 (7th Cir. 1999).

In this case, Plaintiff claims that her termination was in retaliation for her workers' compensation claim, yet she has failed to present evidence to support a causal nexus between the claim and her termination. Plaintiff argues that Defendant discharged her when she chose to take advantage of the disability leave to which she was entitled. While Plaintiff's retaliation claim is devoid of any causal nexus, Defendant has presented sufficient nonpretextual evidence of her discharge. Defendant offers the fact that one month before Plaintiff requested disability leave, Defendant began the process of evaluating Plaintiff's continued employment. Furthermore, Defendant claims that Plaintiff was discharged for her poor performance rather than for filing a workers' compensation claim. This Court is troubled by Plaintiff's complete lack of evidence to support her retaliation claim. It is well-settled that the onus is on Plaintiff to come forward with evidence of a causal connection and Plaintiff has utterly failed to meet this burden. Aside from a suspicious timing element, which is insufficient in and of itself, Plaintiff offers nothing in the way of a retaliatory discharge claim. Therefore, her claim under the Illinois Workers' Compensation Act must fail.

## CONCLUSION

This Court will not sit as a "super-personnel department that reexamines an entity's business decisions" in age and disability discrimination cases. *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986). The employer is admittedly in a much better position to gauge an employee's job performance and the adequacy thereof. A decision to terminate an employee for deficient performance is within the sound business discretion of the employer. "A company has a right to expect not only that its employees be productive, but that they be productive in the company's way." *Brown v. M & M/Mars*, 883 F.2d 505 (7th Cir. 1989). In this case, Defendant offered evidence

claiming it terminated Plaintiff's employment for her poor performance on the job, and Plaintiff has failed to refute that evidence. Therefore, she has failed to meet the prima facie case of age and disability discrimination. Plaintiff has also failed to establish a causal connection between her workers' compensation claim and her termination. As such, Defendant's motion for summary judgment is **GRANTED.**

**IT IS SO ORDERED.**
**DATED:** August 27, 2001

**WILLIAM J. HIBBLER, DISTRICT JUDGE**